UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,

    -against-

ALEXANDER NOSOV, et al.

                                    Defendant.
------------------------------------------------------------- x

**CLARIFYING ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

00 Cr. 314 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        On January 14, 2021 Defendant Alexander Nosov filed a Motion for a Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 96, 104), which the Government opposed by letter, dated January 18, 2021 (ECF No. 108). On January 21, 2021, I entered an order denying relief based on Nosov's failure to demonstrate extraordinary and compelling reasons warranting relief. (ECF No. 109). Nosov appealed the denial, and the Second Circuit remanded the case, pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), because I "did not sufficiently explain [my] decision" and mandated that I enter an order clarifying the reasons for my decision. (ECF No. 112). Although the mandate does not require that I expressly consider the arguments Nosov has made in favor of release, the Second Circuit noted that my conclusion that Nosov failed to show extraordinary and compelling reasons "stands in tension" with the Government's acknowledgement that Nosov's BMI—above 30—places him at greater risk for COVID-19, thus appearing to demonstrate extraordinary and compelling reasons for a sentence reduction.

        Before me now is Nosov's renewed motion (ECF No. 113). Having considered Nosov's arguments, and for the reasons provided below, the motion is denied because even assuming that Nosov's obesity constitutes extraordinary and compelling reasons, the relevant

1

Section 3553(a) factors outweigh Nosov's stated extraordinary and compelling reason, and release would undermine the goals of the original sentence.

Nosov was convicted after a jury trial of (1) kidnapping in aid of racketeering; (2) murder in aid of racketeering; and (3) conspiracy to kidnap. ECF No. 30. The facts adduced at trial are as follows. Nosov was a member of the Tatarin Brigade, a Russian organized crime group, which engaged in extortion, hostage-taking, robbery, murder, and other illegal activity. Kobozev worked as a bouncer at a nightclub frequented by Nosov. In November 1995, Nosov got into a fight with the club's lead musician, after the band refused to perform a song at Nosov's request. Kobozev, the club's owner, and a third man brought Nosov in an office in the club, threatened him with a gun, and caused him to feel humiliated. Nosov then gathered four other members of the Tatarin Brigade (co-defendant Erchmine, cooperating witness Spitchenko, unindicted fugitive Gozman, and Tatarin), who agreed to retaliate. A few days later, they spotted Kobozev at an autobody shop in Brooklyn, and lured him into a stockroom. A fight broke out, and Nosov shot Kobozev in the back. The men then loaded Kobozev into Kobozev's car and drove him to Spitchenko's home in Livingston, New Jersey to bury Kobozev. Kobozev, still alive, pleaded to be taken to a hospital, but his plea was denied. Just before they reached Spitchenko's home, Ermichine broke Kobozev's neck, apparently killing him, and Nosov, Ermichine, and Gozman buried Kobozev in a shallow grave in Spitchenko's backyard. When Tatarin learned of the burial, he advised that they move and rebury Kobozev in a deeper grave. Over the next year, the men twice attempted to dig a second grave to rebury the body but were unsuccessful.

At trial and during sentencing, Nosov maintained his innocence and denied the government's allegations in their entirety. He claimed then, and in post-conviction motions,

that he was out of the country, which alibi he claimed he could establish through letters of friends and family. It is only in Nosov's most recent filings, starting in October 2020, that Nosov has conceded his presence for and involvement in the brutal murder for which he was charged and convicted. However, Nosov still attempts to downplay his role, characterizing it as the conduct of an immature youth and arguing that his only motivation was to impress his girlfriend.

Nosov moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), citing his youth and new evidence suggesting lesser culpability. In its opposition, the Government noted that Nosov did not identify underlying health conditions that put him at increased risk from COVID-19, but that according to Nosov's BOP medical records, his body mass index (BMI) was above 30, which then-current CDC guidance placed him at an increased risk. The Government argued that relief was not warranted based on the relevant Section 3553(a) sentencing factors. I agree.

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); however, a court may "reduce the term of imprisonment. . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Although I have reservations as to whether Nosov's obesity, standing alone, constitutes extraordinary and compelling reasons warranting relief, *see United States v. Pabon*, No. 17-CR-312, 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021) (collecting cases in which courts have denied relief based on a BMI above 30), even assuming that Nosov's obesity is

3

sufficient, I find that the Section 3553(a) factors militate against a sentence reduction and in favor of adhering to the sentence imposed.

The relevant Section 3553(a) factors remain as applicable today as they were at the time of his sentencing. As Judge Robert Carter noted at sentencing (since deceased), Nosov committed a vicious crime and showed no mercy to Kobozev. Nosov has accepted responsibility only recently, and only partially. Although he now admits that he was present and participated in the brutal killing, he tries to downplay his involvement, arguing that he did so only to impress his girlfriend, and that the killing was unplanned and unintentional. Nosov's belated concession conveniently ignores that it was Nosov's conduct and feeling of humiliation that set the wheels in motion for the deplorable consequences culminating in Kobozev's murder. Nosov's efforts to rewrite history indicate that he still does not appreciate the harm he has imposed, on Kobozev and his family and friends. Although Nosov's educational achievements and conduct while in prison are laudable, the criteria supporting Judge Carter's sentence of life remain relevant.

In addition, I find that adhering to the sentence imposed is necessary to avoid disparities in sentencing. Both Nosov and Ermichine were sentenced to life sentences, based on similar guilty conduct—with Nosov shooting Kobozev in the back and Ermichine breaking his neck, and both men participating in the burial. But as noted above, it was Nosov's belligerent encounter with a musician at the nightclub and his feeling of humiliation in the back office that led to Kobozev's murder. Reducing Nosov's sentence while leaving Ermichine's in place would create a sentencing disparity.

In sum, even assuming that Nosov's obesity may be considered extraordinary and compelling reasons for release or reduction of sentence, I find that the relevant Section 3553(a)

4

factors militate against a sentence reduction. The Clerk shall terminate the open motion (ECF No. 113). To the extent that this petition may be considered as having been brought under 28 U.S.C. § 2255, no certificate of appealability shall issue, since Nosov has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

SO ORDERED.

Dated:   May 5, 2022
         New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge